UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-5728-DMG (JPRx)** | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 1 of 10 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE COUNTER-CLAIMANT LEON ELSTER, INC.'S MOTION FOR DEFAULT JUDGMENT [44]**

Plaintiff Leon Elster ("Elster") filed this action in Los Angeles County Superior Court on July 14, 2021, and it was removed to this Court on August 12, 2022. [Doc. # 1.] On August 18, 2022, Defendants, including Leon Elster, Inc. ("LEI"), filed their Answer, and LEI filed a Counterclaim. [Doc. # 8.] On August 24, 2022, Leon filed an Answer to the Counterclaim. [Doc. # 10.]

Elster's affirmative claims were dismissed on December 5, 2022, for failure to comply with a Court order and for failure to prosecute. [Doc. # 31.] The Court struck Elster's Answer and entered his default on the Counterclaims on May 31, 2023. [Doc. ## 41, 42.] Now before the Court is LEI's Motion for Default Judgment on the Counterclaims ("MDJ"). [Doc. # 44.] On August 4, 2023, the Court held a hearing, at which Elster did not appear. For the reasons set forth herein, the MDJ is **GRANTED in part and DENIED in part**.

## I.
## FACTUAL ALLEGATIONS

Elster was at all relevant times an officer and director of LEI. Countercl. ¶ 34.

**A.    Bakhu Shares**

LEI alleges that on or about August 7, 2019, LEI was the equitable owner of at least 50,000 shares of stock of Bakhu Holdings, Corp., and had a legal and equitable right to possess them. Countercl. ¶ 6. Elster has and had no ownership interest in, or right to possess, any of the Bakhu shares. *Id*. at ¶ 7. But Elster, as an officer and director of LEI, misappropriated the certificate for the shares, and continues to retain possession of the certificate. *Id*. at ¶ 8. When LEI discovered that Elster had misappropriated the shares, LEI demanded the return of the shares or payment of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 2 of 10 |

the value of the shares. But Elster refused, and continues to refuse, to return the shares or pay LEI for their value. *Id*. at ¶ 9. LEI has accordingly lost the value of the shares, and the ability "to take such action with regard to those shares that it deems necessary." *Id*. at ¶ 10.

**B.    GrowPod Shares**

LEI alleges that, on or about August 16, 2017, it was the equitable owner of at least 100,000 shares of GrowPod stock, represented by certificate number 173. Countercl. ¶ 11. LEI had the equitable right to possess the stock because it had paid for the shares. *Id*. Elster has and had no ownership interest in the shares. *Id*. at ¶ 12. But Elster, while acting as an officer and director of LEI, had the stock certificate issued in his name, rather than in the name of LEI, without LEI's consent. *Id*. at ¶ 13. When LEI discovered that Elster had misappropriated the shares, LEI demanded they be returned or that Elster pay LEI their value, but Elster refused. *Id*. at ¶ 14. LEI has accordingly lost the value of the shares and the ability to take action on the shares. *Id*. at ¶ 15.

LEI also alleges that on or about May 29, 2018, LEI was the equitable owner of at least 90,000 shares of GrowPod stock represented by certificate number 305. Countercl. ¶ 16. LEI had the equitable right to possess the stock because it had paid for the shares. *Id*. Elster has and had no ownership interest in the shares, but while acting as an officer and director of LEI, he had the certificate issued in his name, without LEI's consent. *Id*. at ¶¶ 17–18. Elster continues to retain possession of the certificate, in spite of LEI's demand that he return the shares or pay LEI for their value. *Id*. at ¶¶ 18–19. LEI has accordingly lost the value of the shares and the ability to take action thereon. *Id*. at ¶ 20.

**C.    Kush Bottles Shares**

Finally, LEI alleges that on or about January 25, 2018, LEI was the equitable owner of 10,324 shares of Kush Bottles stock, represented by certificates 2122 and 2124, because LEI paid for the stock. Countercl. ¶ 21. Elster has and had no ownership interest in the Kush Bottles stock, but misappropriated the stock by having the certificates issued in his name, without LEI's consent. *Id*. at ¶¶ 22–23. He retains the stock certificates, despite LEI's demand that he return the shares or pay LEI for their value. *Id*. at ¶¶ 23–24. LEI has accordingly lost the value of the shares and the ability to take action thereon. *Id*. at ¶ 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 3 of 10 |

**D.     Eissa Loans**

Around February 9, 2018, Elster loaned funds to Prince Abrahim Eissa. Countercl. ¶ 26. In return, he received a promissory note in the amount of $25,000. The note was payable to Elster, but he used $23,100 in LEI funds to partially fund the note. *Id*. Around May 23, 2018, Elster again loaned funds to Eissa and received a promissory note in the amount of $35,000, payable to Elster. *Id*. at ¶ 28. In his capacity as an officer of LEI, Elster used $30,100 in LEI funds to partially fund the promissory note. *Id*. Elster has received and continues to receive and retain all payments by Eissa on both promissory notes. *Id*. at ¶¶ 27, 29. After LEI discovered that Elster had misappropriated the payments from Eissa, LEI demanded that Elster remit those payments to LEI, but Elster has refused to do so. *Id*. at ¶ 30.

**E.     Demand**

In its Counterclaim, LEI demands compensatory and punitive damages, imposition of a constructive trust in favor of LEI over the stock certificates, loan payments belonging to LEI, and injunctive relief. Countercl. at 16.

**II.
DISCUSSION**

**A.     Federal Rule of Civil Procedure 55(b)(2), Local Rule 55-1, and the Eitel Factors**

LEI has complied with the procedural requirements applicable to default judgments. *See* Fed. R. Civ. P. 55(b)(2); C.D. Cal. L.R. 55-1; Stuart Elster Decl. ¶¶ 31–32 [Doc. # 44 at 14]; Bockman Decl. ¶ 4 [Doc. # 44 at 21]. In *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), the Ninth Circuit set forth a number of factors that courts may consider when evaluating a default judgment motion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

   **1.     Possibility of Prejudice to LEI**

Because Elster has apparently elected not to participate further in these proceedings, failure to enter a default judgment will prejudice LEI by denying it the right to judicial resolution of its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 4 of 10 |

claims. Absent default judgment, LEI would be "without other recourse for recovery." *See Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). The first factor therefore weighs in favor of default judgment.

### 2. Merits of LEI's Substantive Claim and Sufficiency of the Complaint

LEI seeks default judgment on its claims for (i) conversion, (ii) breach of fiduciary duty, and (iii) unjust enrichment against Elster.[1] LEI has submitted a well-pleaded complaint, and since default has been entered, the Court presumes that LEI's allegations are true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default[,] the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true.") (emphasis added). For the reasons discussed below, LEI has made out claims for conversion, breach of fiduciary duty, and unjust enrichment as to the GrowPod and Kush Bottles shares and the promissory notes, but not as to the Bakhu shares.

### a. Conversion

Conversion requires "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citing *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)). To establish conversion, it "is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996).

LEI's factual allegations, which the Court must take as true, are sufficient to establish the elements of conversion as to the GrowPod and Kush Bottles stock, and as to the Eissa promissory note. LEI alleges that LEI funds were used to purchase the GrowPod and Kush Bottles stock and to fund the promissory notes. *See* Countercl. ¶¶ 11, 16, 21, 26, 28. LEI also alleges that Elster had the stocks and promissory notes issued in his name, despite LEI's ownership interest in them,

---

[1] LEI also asserted a claim for "possession of personal property" in its Counterclaim. The Court understands this claim to be a claim for trespass to chattels. *See, e.g.*, *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003) ("[T]he tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered.'") (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 14 (5th Ed. 1983)). LEI mentions, but does not otherwise discuss, this claim in its MDJ. *See* MDJ at 4 (noting that it asserted this claim). Because LEI does not discuss this claim in its MDJ, the Court concludes that LEI does not seek judgment on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|

| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 5 of 10 |
|---|---|---|---|

but refused to repay LEI when asked to do so. *Id*. at ¶¶ 12–13, 17–18, 22–23, 27, 29. Finally, LEI has properly alleged damages, because it no longer has its money.

LEI's factual allegations do not establish, however, LEI's ownership or right to possession of the Bakhu shares. LEI alleges that "[o]n or about August 7, 2019, LEI was the equitable owner of not less than 50,000 shares of stock of Bakhu Holdings, Corp. (the 'Bakhu Shares'), and had the legal and equitable right to possess the same." Countercl. ¶ 6. But equitable ownership of the shares is a legal conclusion, not a fact. LEI's Counterclaim does not allege any facts to explain *why* it was the equitable owner of the Bakhu shares.

Stuart Elster, Elster's son and an officer and member of the board of directors of LEI,[2] submitted evidence relating to LEI's claim to equitable ownership of the Bakhu shares. Stuart's evidence indicates that LEI funds were used to purchase stock in a different company, which were subsequently exchanged for the Bakhu shares. Yet, these facts are not in the Counterclaim, the pleading as to which default was entered. Because a default has been entered, the Court presumes that LEI's allegations are true. *See Geddes*, 559 F.2d at 560. But "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Because the facts establishing LEI's ownership are not pleaded in the Counterclaim, LEI's conclusory allegation that it is the "equitable owner" of the Bakhu stock is insufficient to establish ownership, and thus insufficient to establish conversion as to the Bakhu shares.

### b. Breach of Fiduciary Duty

Under California law, the elements of a claim for breach of fiduciary duty are: "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646 (2018).

Elster's role as an officer and director of LEI gave rise to a fiduciary duty to the company. Countercl. ¶ 34; *see also Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 179 (2003) ("Officers and directors owe a fiduciary duty to stockholders."). Elster breached his fiduciary duty as to the GrowPod and Kush Bottles stock and the promissory notes by misappropriating LEI's funds. *See, e.g.*, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 395 (2014) (self-dealing transfer of assets breaches fiduciary duty). And as already discussed with respect to conversion, LEI was damaged by its loss of funds. At the same time, because LEI's Counterclaim does not establish LEI's

---

[2] The Court refers to Stuart Elster as "Stuart" and Leon Elster as "Elster" to avoid confusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 6 of 10 |

ownership of the Bakhu stock, LEI has not made out a claim for breach of fiduciary duty as to the Bakhu stock.

### c. Unjust Enrichment

A quasi-contract claim premised on unjust enrichment requires the plaintiff to show "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). For the same reasons LEI has made out a conversion and breach of fiduciary duty claim as to the GrowPod and Kush Bottles stock and the promissory notes, LEI has also established a claim to recover for Elster's unjust enrichment at LEI's expense.

### 3. The Sum of Money at Stake

The next *Eitel* factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). LEI seeks precisely the sum of money that Elster misappropriated from LEI, *i.e.*, $187,892, plus interest. Under the circumstances, this sum is reasonable in relation to Elster's conduct.

### 4. The Possibility of a Dispute Concerning Material Facts

There is no possibility of a dispute concerning the material facts of the case because the well-pleaded factual allegations are presumed to be true. This *Eitel* factor thus weighs in favor of default judgment.

### 5. Excusable Neglect

Under this factor, the Court must consider whether Elster's default may have been due to excusable neglect. *Eitel*, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1082 (C.D. Cal. 2012). Elster previously participated in these proceedings. After his counsel withdrew, the Court granted Elster multiple extensions of time in which to find counsel, and repeatedly warned Elster about the potential consequences of his failure to comply with Court orders and to defend against the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 7 of 10 |

Counterclaim. [*See* Doc. ## 31, 35, 38.] Under the circumstances, the Court must conclude that Elster has chosen not to defend against the Counterclaim. This factor therefore weighs in favor of default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

Notwithstanding the strong policy presumption in favor of a decision on the merits, Elster's failure to defend against these claims makes a decision on the merits impractical. Therefore, this factor weighs in favor of default judgment.

\* \* \* \* \*

Having weighed the *Eitel* factors, the Court concludes that the entry of a default judgment as to LEI's claims relating to the GrowPod and Kush Bottles shares and the promissory notes is warranted. But default judgment is not appropriate as to the claims relating to the Bakhu shares.

### B. Remedies

LEI seeks $241,382.82 in total damages, which consists of (a) $187,892 in damages and (b) $53,490.82 in prejudgment interest.[3]

### 1. Damages

The damages LEI seeks consist of (1) $25,000 for the Bakhu stock, (2) $50,000 for the first lot of the GrowPod stock, (3) $45,000 for the second lot of the GrowPod stock, (4) $14,292 for the Kush Bottles stock, (5) $23,100 for the first Eissa loan, and (6) $30,100 for the second Eissa loan.

#### a. Evidence

LEI has submitted evidence that supports its claim for damages for the Grow Pod shares, in the form of stock purchase agreements for 200,000 shares of Grow Pod Rx, Inc., for $100,000, and 300,000 shares of Grow Pod Solutions, Inc., for $150,000. *See* Stuart Elster Decl., Exs. 7, 11. LEI also points to stock certificates reflecting 200,000 shares in Grow Pod Rx and 300,000 shares

---

[3] At two points in the MDJ, LEI states that it seeks $212,892 in damages. *See* MDJ at 11, 12. This amount is unexplained, and the Introduction, Conclusion, and Proposed Judgment all state that the damages amount is $187,892. *See id*. at 5, 13; *see also* Proposed Judgment [Doc. # 44-2]. Accordingly, the Court treats the $212,892 figure as an error.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-5728-DMG (JPRx)** | Date | August 4, 2023 |
|---|---|---|---|
| Title | ***Leon Elster v. Stuart Elster, et al.*** | Page | 8 of 10 |

in Grow Pod Solutions, in Elster's name. *Id.*, Exs. 8, 12. Finally, LEI has submitted a cashier's check for $50,000 from LEI to HSB Holding Company, Inc., the counterparty to the Grow Pod Rx purchase agreement, and three checks from LEI to Holmes & Sturgis, Inc., the counterparty to the Grow Pod Solutions purchase agreement, for $15,000 each. *Id.*, Exs. 9, 13–15. The checks were signed shortly after the stock purchase agreements were signed. Stuart attests that he understands the checks were made in part payment for the Grow Pod shares. *Id.* at ¶¶ 8–13.

LEI's evidence also supports its damages calculation for the Kush Bottles shares. In December 2017 and January 2018, Elster agreed to purchase a total of 6,483 shares in Kush Bottles, for a total of $14,292. *See* Stuart Elster Decl., Exs. 14, 17, 20. The stock certificates were all issued in Elster's name, but LEI made all the payments. *Id.*, Exs. 15, 18, 19, 21, 22.

Finally, LEI has attached documentation of two loans to Eissa. The first is a promissory note, dated February 8, 2018 and signed by Eissa and Elster. Stuart Elster Decl., Ex. 23. It calls for Eissa to pay $25,000 to Elster, "an individual," and a letter on LEI letterhead referring to the note states that the lender is "Leon Elster, an individual." *Id.* In two checks dated February 9, 2018, and February 12, 2018, LEI paid Eissa a total of $23,100. *Id.*, Exs. 24–25.

LEI made additional payments to Eissa on May 10, 2018, for $4,000, and on May 17, 2018, for $3,000. Stuart Elster Decl., Ex. 26. On May 23, 2018 letter, Elster and Eissa signed a document on LEI letterhead noting a $35,000 loan to Eissa, secured by a deed of trust encumbering a piece of property in Los Angeles. *Id.*, Ex. 25. The letter provides that the lender is "Leon Elster, an individual." *Id.* The beneficiary of the deed of trust is Elster. *Id.* Stuart identifies the early May payments as having been subsumed within the May 23, 2018 note. *See id.* at ¶ 29. Over the next several weeks, LEI wrote Eissa checks for a total of $23,500. *Id.*, Ex. 26. LEI's books and records do not indicate that LEI has received any repayments from Eissa pursuant to the loans. *Id.* at ¶¶ 26, 30.

    b.  **Discussion**

The type of recovery available to LEI differs according to its various claims. A plaintiff who establishes a conversion claim may recover damages in the amount of the value of the property at the time of conversion. Cal. Civ. Code § 3336. But "[w]here a breach of fiduciary duty occurs, a variety of equitable remedies are available, including imposition of a constructive trust, rescission, and restitution, as well as incidental damages." *Meister*, 230 Cal. App. 4th at 396. The remedy for unjust enrichment is also to require the party who is unjustly enriched "to make restitution of or for property or benefits received, retained, or appropriated, where it is just and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 9 of 10 |

equitable that such restitution be made. . . ." *Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007). "Typically, the defendant's benefit and the plaintiff's loss are the same, and restitution requires the defendant to restore plaintiff to his or her original position." *Id*. Under these circumstances, it is reasonable to award damages on LEI's conversion claim, since the damages on LEI's conversion claim are likely the same as the restitution on LEI's equitable claims.

LEI has proved that Elster is liable for the following damages:

- $50,000 for the first Grow Pod purchase;
- $45,000 for the subsequent Grow Pod purchase;
- $14,292 for the Kush Bottles purchase;
- $23,100 for the first Eissa loan; and
- $30,500 for the second Eissa loan.

This amounts to a total of $162,892.00.

LEI also seeks $53,490.82 in prejudgment interest. But LEI failed to plead its entitlement to prejudgment interest in its Counterclaim. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).[4] Because LEI failed to plead its entitlement to prejudgment interest in its Counterclaim, Elster had no notice that this amount might be awarded on default. *See Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010) (denying request for prejudgment interest on default judgment because the plaintiff failed to demand prejudgment interest in its pleading) (citing *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007)). Accordingly, LEI's request for prejudgment interest is DENIED.

//

//

//

//

---

[4] Default judgment differs in this way from other final judgments, which "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-5728-DMG (JPRx) | Date | August 4, 2023 |
|---|---|---|---|
| Title | *Leon Elster v. Stuart Elster, et al.* | Page | 10 of 10 |

## IV.
## CONCLUSION

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** LEI's MDJ. LEI may recover a total of $162,892. LEI's oral motion to amend the Counter-Claim is **DENIED** for the reasons stated on the record. A separate judgment shall issue in favor of LEI and against Elster, consistent with this Order.

**IT IS SO ORDERED.**